IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**FASSIL ASGHEDOM,**

    **Plaintiff,**

**v.**                                                               **3:08-CV-2289-O-BK**

**FEDERAL RESERVE BANK**
**OF DALLAS,**

    **Defendant.**

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and the District Court's order of September 3, 2010, this case has been referred to the United States Magistrate Judge for the conduct of pretrial proceedings. (Doc. 29). Defendant Federal Reserve Bank of Dallas has moved for summary judgment. (Doc. 27). For the following reasons, the undersigned recommends that the Court grant Defendant's *Motion for Summary Judgment*. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

**I.  BACKGROUND**

In May 2009, Plaintiff filed an amended complaint alleging that his former employer, the Federal Reserve Bank of Dallas, had retaliated against him and terminated him based on his age (57 years old), race (African-American), and national origin (Eritrean). (Doc. 8 at 1, 4). Specifically, Plaintiff claimed that he worked at the Federal Reserve in the cash department as a high speed operator from June 2000 until August 2007. (*Id.* at 2). In March 2006, he complained to the Equal Employment Opportunity Commission ("EEOC") that Defendant had

unfairly chosen recipients of a promotion. (*Id.*). Thereafter, Plaintiff claims, Defendant's supervisors and management treated him in a discriminatory fashion based on his protected status and in retaliation for him filing an EEOC complaint. (*Id.*). While Plaintiff contends that Defendant told him that he was being terminated due to poor production, he maintains that other employees had lower production than he did and were not terminated. (*Id.* at 3).

Defendant now has filed its *Motion for Summary Judgment*. (Doc. 27). In support, Defendant first argues that Plaintiff cannot maintain his retaliation claim because he did not engage in any protected conduct in which he opposed an unlawful employment practice. (*Id.* at 11). In particular, Defendant contends that Plaintiff's retaliation complaint is based solely on an internal 2005 complaint he made alleging unfair promotions, but he claimed in his deposition that he did not think he was more qualified for the positions than the recipients, just that it was "unfair" for Defendant to make the promotion decisions before going through the formality of completing the interview process. (*Id.* at 11-12). Defendant also argues that Plaintiff cannot establish a causal connection between any alleged protected conduct and his termination more than a year and a half later. (*Id.* at 12). In fact, Defendant points out that Plaintiff admitted during his deposition that he received poor work performance reviews both before and after his complaint, and that no one at the Federal Reserve ever negatively commented on his complaint. (*Id.* at 12-13).

Finally, Defendant maintains that Plaintiff's retaliation claim also fails because the Federal Reserve had a legitimate, non-discriminatory reason for terminating him given his low productivity, poor accuracy, and Plaintiff's own admissions during his deposition that his work performance declined throughout his employment. (*Id.* at 13). Defendant points out that

2

Plaintiff was progressively disciplined and warned that his job performance was unacceptable, given notice of his deficiencies and an opportunity to fix them, placed on probation, and ultimately terminated when his performance did not improve sufficiently to meet the cash department's minimum requirements. (*Id.* at 13-14).

As for Plaintiff's discrimination claim, Defendant contends first that Plaintiff cannot establish a *prima facie* case because he was not qualified for his position at the time of his termination and admitted during his deposition that he could not keep up with the increasing demands of the position and was unable to meet the minimum production expectations when he was fired. (*Id.* at 16-17). Further, Defendant argues that Plaintiff cannot identify any similarly situated employee outside of his protected class who was treated more favorably, which also precludes Plaintiff from stating a *prima facie* claim. (*Id.* at 17). While Plaintiff argued in his deposition that Lapatria Scurlark was treated more favorably even though she had similar performance problems, Defendant contends that Scurlark is an African-American person who was over age 40 when Plaintiff was fired, and there is no record evidence that Scurlark is not Eritrean. (*Id.*). Further, Defendant points out that Scurlark also was counseled and placed on probation for her performance issues, but she showed continued improvement and was able to exceed the cash department's productivity goals. (*Id.* at 18). Finally, Defendant contends that Plaintiff cannot establish that its legitimate, nondiscriminatory reasons for terminating him were a pretext for unlawful discrimination. (*Id.* at 18-20).

In response, Plaintiff states that there exist genuine issues of material fact, and he has submitted an affidavit stating that after he filed his complaint about not receiving a promotion, (1) his supervisors gave him the most difficult money to process, causing his machine to jam, (2)

his room lead, Manoj Kumar, changed the location of his work area, which made him have to run back and forth, (3) Kumar was rude to him, threw things at him, called him "old man" and cursed at him, and the Defendant did nothing to stop the abuse, (4) supervisors would make erroneous entries on his machine that he would get blamed for, and (5) he tried to explain his low numbers, but no one would listen to him. (Doc. 31, Affidavit at 4-5). Plaintiff further argues that other employees had worse productivity than he, but they were not harassed, fired, or disciplined and Defendant helped one woman with lower numbers improve her productivity by doing her work for her. (*Id.* at 5-6). He complains that Defendant has not given him discovery which would support his claims of discrimination and retaliation, and the production figures they did provide to him appear to have been altered. (*Id.* at 6).

In reply, Defendant maintains that Plaintiff's affidavit, in which he stated that multiple employees had worse productivity than he and were not written up, impermissibly contradicts his deposition testimony in which he stated that he did not know whether Scurlark, who was the only employee with production numbers lower than Plaintiff, had been disciplined. (Doc. 33 at 1-2). Defendant concludes that Plaintiff's unsubstantiated belief that he was discriminated and retaliated against based on his protected status is not sufficient to defeat summary judgment. (*Id.* at 4).

## APPLICABLE LAW AND ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party

moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 989 F.2d 1257, 1266 (5th Cir. 1991) (citation omitted and alternations in original).

**A.     Retaliation Claim**

To establish a *prima facie* retaliation case, a plaintiff must show that: (1) he engaged in protected conduct; (2) he thereafter was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *See Baker v. American Airlines, Inc.,* 430 F.3d 750, 754 (5th Cir. 2005). If a plaintiff is able to establish a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Chaney v. New Orleans Public Facility Mgmt., Inc.,* 179 F.3d 164, 167 (5th Cir. 1994). If

5

the employer meets that burden, the burden of persuasion returns to the plaintiff to establish that the reason given is a mere pretext for retaliation. *Id.* "In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Id.* at 168.

The record in this case indicates that in December 2005, Plaintiff filed a complaint with Defendant's personnel office, contending that the interview and placement process in relation to an administrative associate job posting was discriminatory because the winning candidates had been preselected.[1] (Doc. 27, Exh. B "Employee Complaint Form"; January 31, 2006 memo from Linda Dublin). Plaintiff noted that he had complained about this preselection to, *inter alia*, his boss Rick Mase as well. (*Id.*). His complaint was determined to be unfounded because the person Plaintiff stated had told him about the preselection denied having such a conversation with Plaintiff. (*Id.* at January 31, 2006 memo from Linda Dublin). Plaintiff attested that after he filed his complaint, his supervisors gave him more difficult work, Kumar moved his work station and verbally abused him, and supervisors made erroneous entries on his machine that he got blamed for. (Doc. 31, Affidavit at 4-5).

Assuming that the above facts are sufficient for Plaintiff to establish a *prima facie* case of retaliation, *Baker,* 430 F.3d at 754, the Federal Reserve nevertheless has articulated a legitimate, non-discriminatory reason for his termination. Rick Mase, Assistant Vice President over the

---

[1] There is no evidence in the record to support Plaintiff's contention from his complaint that he filed a claim with the EEOC in March 2006 regarding that promotion process. Even assuming he did, however, the outcome of this case would be the same for the reasons described *infra*.

Cash Department for the Federal Reserve Bank of Dallas, averred that Plaintiff worked as a Cash Associate for Defendant, and Cash Associate productivity is measured by the number of errors and the average speed at which associates process bundles of notes per hour. (Doc. 27, Mase Affidavit at 1). Mase further attested that he made the decision to terminate Plaintiff based on input from Cash Department supervisors, Johnny Benavidez and Greg Rhodes, and Kumar had no input or role in the disciplinary or termination decisions. (*Id.* at 1-2). Additionally, Mase asserted, Lapatria Scurlark similarly struggled to reach her production goals, at which point she was disciplined and placed on probation, which was the same process used to discipline Plaintiff. By the time several months had passed, however, Scurlark had solidly improved her productivity and exceeded the minimum requirements, but Plaintiff had not done so. (*Id.* at 2).

Plaintiff's deposition testimony also supports Defendant's contention that it terminated him based on his productivity and accuracy problems. Plaintiff acknowledged that toward the end of his time at the Federal Reserve, his job became more difficult because the office was short-handed. (Doc. 27, Asghedom Deposition Testimony at 106). For 2001, he met his performance goals. (*Id.* at 139-40). But, in 2002, his productivity was below the department average, for 2003 his productivity was 27% below the department average, and for 2005 he ranked 14th out of 17 operators for productivity and continued to make processing errors. (*Id.* at 141-45). In 2006, he again received comments that he needed to improve his productivity and accuracy. (*Id.* at 148-49). In January 2007, management warned him that his year-to-date production average of 81,678 notes processed was well below the target of 87,000, and, in January 2006, Plaintiff only had processed 74,145 notes. He claimed that the problems were caused by supervisors purposely "screwing up" his numbers, a bad machine, poor money

condition and that Defendant's numbers were inaccurate, but he could not prove that. (*Id.* at 155, 177-78, 194, 201).

Plaintiff also acknowledged at his deposition that in January 2007, Benavidez gave him a verbal warning, put him on probation until July 2007, and warned him that he could be terminated if he did not improve because his production was too low. (*Id.* at 181-84). Even after receiving this warning, however, Plaintiff did not seek out additional training in an effort to improve his productivity because he was doing better on his own, although he still was not average in productivity. (*Id.* at 186). From December 2006 to July 2007, Plaintiff had the lowest or second lowest production on his team, although Scurlark was ranked lower sometimes. (*Id.* at 187-90). Plaintiff admitted that he was not aware of what kind of discipline Scurlark received and how she had improved her performance, and he still believed he was fired in August 2007 based on his race and national origin even though Scurlark is African-American. (*Id.* at 191-93, 230).

In light of Plaintiff's admitted troubles for several years in meeting productivity and having problems with accuracy and the warnings that he received, there is no material issue of fact in dispute that Plaintiff was fired because he was not able to do his job. The uncontested evidence is that Scurlark was able to significantly improve her job performance after being put on probation, and Plaintiff was not. (Doc. 27, Mase Affidavit at 2). Moreover, while the Court has considered whether Plaintiff's poor work performance might be a result of Defendant's allegedly retaliatory acts of (1) his supervisors giving him more difficult work, (2) Kumar moving his work station and verbally abusing him, and (3) his supervisors blaming him for erroneous entries they made on his machine, his performance problems began in 2002, long

before his December 2005 complaint about Defendant's discriminatory promotion practices. (Doc. 27, Asghedom Deposition Testimony at 141-45; Doc. 31, Affidavit at 4-5). Further, Plaintiff's unsupported belief that he was retaliated against based on his protected status is not sufficient to withstand summary judgment. *de la O*, 417 F.3d at 502. In short, Defendant has articulated a legitimate, non-discriminatory reason for its action, namely Plaintiff's poor performance. *Chaney*, 179 F.3d at 167.

At this point, the burden shifts back to Plaintiff to show that Defendant's reason was a mere pretext for retaliation. *Chaney,* 179 F.3d at 167. Plaintiff, however, has not argued or attempted to establish that the Defendant's reason was pretext, and therefore, this Court need not address that issue. *Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001) (holding that a party abandons his argument by insufficiently raising it in the district court). Accordingly, the Court should grant summary judgment as to Plaintiff's retaliation claim.

**B.     Discrimination Claim**

To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Once a plaintiff establishes a *prima facie* case, the employer can rebut that showing by attempting to "articulate some legitimate, nondiscriminatory reason" for its employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff then has the opportunity to show by a preponderance of the evidence that the proffered reasons were a mere pretext for discrimination. *St. Mary's Honor Center*, 509 U.S. at 511.

9

Plaintiff cannot establish a *prima facie* case of discrimination. First, it is apparent from the record evidence discussed above that he was not qualified for his position at the time of his firing because of his poor job performance. *Id.* at 506. Second, LaPatria Scurlark, the only arguably similarly situated employee of record, was not treated more favorably. *Id.* The undisputed evidence shows that both Scurlark and Plaintiff were put on probation due to substandard job performance, but Scurlark was able to improve her performance enough to be able to retain her job, while Plaintiff was not. (Doc. 27, Mase Affidavit at 2). While Plaintiff stated in his affidavit that multiple other employees had worse productivity than he and were not written up, he did not provide any further details about the other employees, thereby rendering his affidavit impermissibly conclusory on this point. *Int'l Shortstop, Inc.*, 989 F.2d at 1266.

Further, even if Plaintiff was able to make out a *prima facie* case of discrimination, Defendant rebutted the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff as described above, and Plaintiff has not attempted to demonstrate that its reason was pretextual. *McDonnell Douglas*, 411 U.S. at 802; *Vela*, 276 F.3d at 678. Accordingly, summary judgment is warranted on Plaintiff's discrimination claim as well.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court grant Defendant's *Motion for Summary Judgment* (Doc. 27).

**SO RECOMMENDED** on November 9, 2010.

*/s/ Renée Harris Toliver*
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*/s/ Renée Harris Toliver*
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE